**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-10262
(Summary Calendar)

CLARENCE LAUDERDALE,

Plaintiff- Appellant,

versus

CITY OF ARLINGTON,

Defendant-Appellee,

Appeal from the United States District Court
for the Northern District of Texas, Dallas
(3:00-CV-0553-L)

January 17, 2003

Before JONES, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Clarence Lauderdale ("Lauderdale") appeals the district court's grant of partial summary judgment to the City of Arlington ("City") regarding his claims of race discrimination under Title VII; age discrimination under the Age Discrimination in Employment Act ("ADEA"); and retaliation. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On January 30, 1984, the City hired Lauderdale, an African-American male, to serve as a jailer for the City's Police Department. Lauderdale was promoted to the position of jail supervisor and held that position until he retired in December 1999. On December 31, 1998, Lauderdale filed his first charge of discrimination with the EEOC alleging that the City discriminated against him because of his race and retaliated against him for complaining of unlawful acts committed by his white co-workers. On August 10, 1999, Lauderdale filed his second charge of discrimination with the EEOC alleging that the City discriminated against him based on his race and retaliated against him for filing his first charge. The EEOC issued a right to sue letter for each charge filed, however, Lauderdale did not file suit within the ninety-day statute of limitations period.[2]

Also on August 10, 1999, Lt. Bill Weatherly and Sgt. Tim Anderson placed Lauderdale in a ninety-day Performance Improvement Program ("PIP"). The City claims that Lauderdale's placement in the PIP was based on his performance deficiencies. Under the PIP, Lauderdale had to demonstrate improvement in the deficient areas or face reassignment, dismissal, or demotion. On November 9, 1999, the City's Police Chief placed Lauderdale on administrative leave with pay pending review of his performance during his PIP by the chain of command. Under the terms of Lauderdale's administrative leave, he had to be available for interviews with Internal Affairs during business hours or notify them if he was not available. The City temporarily assigned Steve Jaeger, a younger white male, to replace Lauderdale as jail supervisor.

On November 17, 1999, after consulting with his attorney, Lauderdale submitted his application for service retirement which became effective December 31, 1999. On December 14, 1999, Lauderdale filed his third charge of discrimination with the EEOC alleging that the City

---

[2]The district court correctly concluded that the first and second charges of discrimination filed with the EEOC were barred by the statute of limitations and could not form the basis of the current lawsuit. Lauderdale apparently concedes this point, but argues that the charges are relevant to show the pattern of discrimination and retaliation that he endured over the last years of his employment with the City.

2

discriminated against him on the basis of his race. Specifically, Lauderdale alleged that he was forced to retire as a result of the City's discriminatory conduct. The EEOC issued a right to sue letter on December 14, 1999. On January 26, 2000, Lauderdale filed his fourth and final charge of discrimination with the EEOC alleging that the City discriminated against him on the basis of race, national origin and color; discriminated against him on the basis of his age; and retaliated against him for filing the three previous EEOC complaints. Specifically, Lauderdale complained of his placement on administrative leave, his replacement by Steve Jaeger, and his forced retirement. The EEOC issued Lauderdale a right to sue letter on the same day.

On March 13, 2000, Lauderdale filed this suit asserting that the City discriminated against him on account of his race, color and national origin; retaliated against him for complaining of unlawful acts; violated his rights under 42 U.S.C. § 1983; and violated the ADEA. Lauderdale also brought a state law claim for false imprisonment arguing that his conditions under the PIP constituted house arrest. The City filed a motion for partial judgment on the pleadings on Lauderdale's § 1983 and false imprisonment claims and a motion for partial summary judgment on the remaining claims. The district court granted the City's motion for partial judgment on the pleadings and for partial summary judgment. Lauderdale appeals the district court's grant of partial summary judgment.

STANDARD OF REVIEW

We review the grant of summary judgment de novo, applying the same standards as the district court. See Mowbray v. Cameron County, Tex., 274 F.3d 269, 278 (5th Cir. 2001). Summary judgment is appropriate only when the record indicates "no genuine issue as to any material fact and

3

that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.

## DISCUSSION

I.    Race and Age Discrimination Claims

The district court disposed of Lauderdale's age and race discrimination claims together.[3] To establish a prima facie case of discrimination under Title VII, a plaintiff must prove his case either through direct evidence, statistical proof, or the test established by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973).[4] The McDonnell Douglas test requires the plaintiff to show: 1) he was a member of a protected class, (2) he was qualified for the position he lost, (3) he suffered an adverse employment action, and (4) that others similarly situated were more favorably treated. See Urbano v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Finally, the "trier of fact proceeds to decide the ultimate question: whether the plaintiff has proved "that the defendant intentionally discriminated against [him] because of [his race]." Id. (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)).

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must prove that: 1) he was discharged; 2) he was qualified for his position; 3) he was within the protected class; and 4) he was replaced by someone outside the protected class, or by someone younger or otherwise discharged because of his age. See Brown v. CSC Logic, Inc., 82 F.3d 651, 654 (5th Cir. 1996). Once

---

[3]The district court correctly held that Lauderdale's race, color and national origin claims are so closely related that separate claims for national origin and color would be superfluous.

[4]Lauderdale asserts that the standards set forth in the Supreme Court's decisions of Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998) and Burlington v. Ellerth, 118 S. Ct. 2257 (1998) should be utilized instead of the McDonnell Douglas burden shifting framework. Because this issue was raised for the first time on appeal, we will not consider it. See Texas v. United States, 730 F.2d 339, 358 n.35 (5th Cir. 1984).

the plaintiff has established a prima facie case, the burden shifts to the employer to rebut the presumption of age discrimination by articulating a nondiscriminatory reason for the adverse employment action. Id.

Placing Lauderdale on administrative leave and replacing him with Steve Jaeger does not constitute "adverse employment acts" for purposes of Lauderdale's race discrimination claim. Lauderdale's claim that he was forced into retirement does not qualify as a constructive discharge for purposes of his ADEA claim.[5] Thus, we agree with the district court's conclusion that Lauderdale failed to establish a prima facie case for age and race discrimination.

It is apparent that the City's reason for placing Lauderdale on administrative leave was to allow it time to review his performance under the PIP. The district court correctly concluded that this act does not qualify as an adverse employment action. The mere fact that the outcome of the review could result in Lauderdale being reassigned, dismissed, or demoted, does not dictate a different result. This Court has stated that "an employer's action does not give rise to the level of an adverse employment action when it fails to have more than a mere tangential effect on a possible future ultimate employment decision." Mota v. University of Texas Houston Health Sci. Ctr., 261 F.3d 512, 519 (5th Cir. 2001).

The district court also correctly concluded that Steve Jaeger's replacement of Lauderdale is immaterial to his claims of discrimination. Steve Jaeger "temporarily replaced" Lauderdale following his placement on administrative leave. At that time, no decision was made regarding the outcome of Lauderdale's review. Likewise, the district court correctly concluded that Lauderdale's retirement

---

[5]Proof of a constructive discharge can also qualify as an adverse employment action. As such, Lauderdale's constructive discharge claim can also be utilized to establish an adverse employment action for purposes of his race discrimination claim.

5

did not qualify as a constructive discharge. To establish a constructive discharge "an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000). Lauderdale argues that he retired in order to regain his freedom from a wrongful house arrest and false imprisonment and to retain his retirement benefits. We reject Lauderdale's attempt to characterize the terms of his administrative leave as house arrest and false imprisonment.

Lauderdale's also attempts to rely on a "contested" statement by Lt. Weatherly that he was going to be fired as the reason for his decision to retire. Although accepted as true, the district court found this statement unavailing because Lt. Weatherly did not have the power to fire Lauderdale. The district court further found that the actual reason for Lauderdale's retirement was that he erroneously believed that he would lose his retirement benefits if he were fired. If Lauderdale feared he would be fired, as the district court noted, the most logical thing to do would have been to wait and appeal whatever decision was rendered until his remedies were exhausted. Because we agree that his actual reason for retiring was his fear of losing his retirement benefits, we find that Lauderdale's retirement was unreasonable, and thus cannot qualify as a constructive discharge. See Barrow v. New Orleans Steamship Ass'n., 10 F.3d 292, 297 (5th Cir. 1997) (explaining that "the resignation [complained of] must have been reasonable under all circumstances").

II.    Retaliation Claim

Lauderdale also contends that the City retaliated against him because of the charges he filed with the EEOC. To establish a claim of retaliation, a plaintiff must show the following: 1) that he was engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal

link existed between the protected activity and the adverse employment action. See Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996). As we explained above, Lauderdale failed to establish that the City took an  adverse employment action. Thus, his retaliation claim fails.

CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of partial summary judgment to the City.

AFFIRMED.